Reversed and Rendered and Memorandum Opinion filed May 15, 2003









Reversed and Rendered and Memorandum Opinion filed May
15, 2003.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-02-01076-CV

____________

 

BUDGGET INDUSTRIES, INC., Appellant

 

V.

 

FABER ENGINEERING, L.L.C., Appellee

 



 

On Appeal from the 164th District Court

Harris County, Texas

Trial Court Cause No. 01-47495

 



 

M E M O R A N D U M   O
P I N I O N

This is an interlocutory appeal by appellant Budgget
Industries, Inc. (“Budgget”) from the denial of a special appearance and motion
to dismiss for lack of personal jurisdiction in a suit by appellee Faber
Engineering, L.L.C. (“Faber”) against Budgget. 
We reverse the trial court’s finding of personal jurisdiction, render
judgment sustaining appellant’s special appearance, and order dismissal of appellee’s suit for lack of in personam jurisdiction.









PROCEDURAL AND HISTORICAL FACTS

In 2001, Devco U.S.A., L.L.C. (“Devco”), an Oklahoma-based
conveyor company, contracted with a customer to construct a ship-loading
conveyor system to be delivered to Qatar. 
To deliver on the project, Devco selected Faber, a Texas limited
liability company, to design the system, and Budgget, an Oklahoma corporation,
to perform certain steel fabrication work necessary to build the system.

In October, 2000, senior management at Faber communicated
with senior management at Budgget about the project.  As a result of these communications, Faber
sent a letter to Budgget outlining the services that would be required of
Budgget in performing the fabrication work. 
Faber also sent a purchase order on or about October 11, 2000, to
finalize the relationship between the two companies.  Neither the letter nor purchase agreement was
signed by Budgget. 

The Faber-Budgget arrangement called for all fabrication
services to be performed in Oklahoma and for all completed fabrication work to
be shipped to Devco in Oklahoma.  Faber
was to deliver drawings and instructions detailing Budgget’s
required services to Budgget in Oklahoma, perform inspections of Budgget’s work at Budgget’s plant
in Oklahoma, and pay approximately $311,000 for Budgget=s completed work.  An expeditor from Devco was to remain on Budgget’s premises to monitor Budgget=s progress.

In 2001, a dispute arose between Faber and Budgget.  As a result of this dispute, Faber sued
Budgget for breach of contract, alleging failure to provide certain machined
parts within specified time parameters. 
In response, Budgget filed a special appearance and original answer,
contending Budgget was not subject to personal jurisdiction in the State of
Texas.

On September 30, 2002, the trial court held an oral hearing
on appellant’s special appearance. 
Finding that Budgget had failed to negate all bases of personal
jurisdiction in Texas, the trial court overruled appellant’s special appearance
and found for appellee. 

Budgget brings this appeal challenging the trial court’s
ruling.








ISSUES ON APPEAL

Asserting three points of error, appellant argues the trial
court erred in finding Budgget failed to negate all bases of jurisdiction in
Texas.  The company contends (1) despite
its limited business relationship with appellee, appellant never submitted to
specific jurisdiction in Texas; (2) despite its occasional purchases from Texas,
appellant never submitted to general jurisdiction in Texas; and (3) the
exercise of jurisdiction by Texas courts over appellant does not comport with
traditional notions of fair play and substantial justice.[1]


STANDARD OF REVIEW

When a defendant challenges a court’s exercise of personal
jurisdiction through a special appearance, he carries the burden of negating
all bases of personal jurisdiction.  Kawasaki
Steel Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex. 1985); Tex. R. Civ. P. 120a.  The reviewing court must affirm if the
judgment can be upheld on any legal theory supported by the evidence.  Nikolai v. Strate, 922 S.W.2d 229, 240
(Tex. App.CFort Worth 1996, pet. denied).  When a personal jurisdiction question is
reviewed, the appellate court must review all of the evidence before the trial
court relating to the special appearance. 
Linton v. Air Bus Industrie, 934 S.W.2d 754, 757 (Tex. App.CHouston [14th Dist.] 1996, writ
denied).  








Most courts hold that the proper standard for reviewing the
evidence in a case involving a challenge to personal jurisdiction is factual
sufficiency.  Angelou v. African
Overseas Union, 33 S.W.3d 269, 277 (Tex. App.CHouston [14th Dist.] 2000, no pet.); Fish
v. Tandy Corp., 948 S.W.2d 886, 892 (Tex. App.CFort Worth 1997, writ. denied).  An appellate court may reverse the decision
of the trial court only if its ruling is so against the great weight and
preponderance of the evidence as to be manifestly erroneous or unjust.  In re. King’s Estate, 244 S.W.2d 660
(1951); Runnells v. Firestone, 746 S.W.2d 845, 849 (Tex. App.CHouston [14th Dist.] 1988, writ
denied).  When, as here, a trial court
does not prepare findings of fact and conclusions of law, a reviewing court
must presume that all factual disputes were found to be in support of the trial
court’s judgments.  Garner v.
Furmanite Australia Pty, Ltd., 966 S.W.2d 798,802 (Tex. App.CHouston [1st Dist.] 1998, pet.
denied).  If the special appearance is
based on undisputed and established facts, the reviewing court shall conduct a de
novo review of the trial court’s order, either granting or denying a
special appearance.  C-Loc Retention
Sys., Inc. v. Hendrix, 993 S.W.2d 473, 476 (Tex. App.CHouston [14th Dist.] 1999, no pet.).

DISCUSSION

A non-resident defendant must have sufficient contacts with
the state of Texas to reasonably require it to be subject to the jurisdiction
of the courts of Texas pursuant to the long arm statute.  Tex.
Civ. Prac. & Rem. Code Ann. ' 17.042 (Vernon 1997); Zac Smith
& Co. v. Otis Elevator Co., 734 S.W.2d 662, 663 (Tex. 1987).  The requirement of sufficient contacts
invokes federal due process guarantees that the exercise of jurisdiction by the
forum state not offend “traditional notions of fair play and substantial
justice.”  Id.  (citing International Shoe Co. v.
Washington, 326 U.S. 201, 316, 66 S. Ct. 154, 158 (1945)).  








Jurisdiction may be exercised where a foreign defendant has “fair
warning” that a particular activity may subject it to the jurisdiction of the
forum state.  Zac Smith, 734
S.W.2d at 663 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472,
105 S. Ct. 2174, 2181B82 (1985) and Shaffer v. Heitner, 433 U.S. 186, 217,
97 S. Ct. 2569, 2587 (1977)).  Such “fair
warning” may be established through either specific jurisdiction or general
jurisdiction.  Zac Smith, 734
S.W.2d at 663.  See also Helicopteros
Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 413B14, 104 S. Ct. 1868, 1872 (1984)
(personal jurisdiction exists if the non-resident defendant’s minimum contacts
give rise to either specific or general jurisdiction); BMC Software Belgium,
N.V. v. Marchand, 83 S.W.3d 789, 795B96 (Tex. 2002) (same).

Neither is present here.[2]

1.         Specific
Jurisdiction

Specific jurisdiction is established if a defendant’s alleged
liability arises from or is related to an activity conducted within the forum
state.  CSR Ltd. v. Link, 925
S.W.2d 591, 595 (Tex. 1996); Schlobohm v. Shapiro, 784 S.W.2d 355, 358
(Tex. 1990).  The court must focus on the
intentional activities and expectations of the defendant in deciding whether
there is jurisdiction.  Id. at
357.  

To establish specific jurisdiction, a defendant must do
something “purposeful” to avail himself of the privilege of conducting
activities within the forum state, thus invoking the benefits of its laws.  Hanson v. Denckla, 357 U.S. 235, 253,
78 S. Ct. 1228 (1958).  See also
Hydrokinetics, Inc. v. Alaska Mechanical, Inc., 700 F.2d 1026, 1028 (5th Cir.
1983).  The defendant’s “purposeful
availment” is determined by considering the quality, nature and extent of the
defendant=s activity in the forum; the
foreseeability of consequences within the forum from activities conducted
outside it; and the relationship between the cause of action and the defendant’s
contacts.  Id.








A defendant’s activities must justify a conclusion that the
defendant reasonably anticipated being called into court in the forum
state.  See World-Wide Volkswagen v.
Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 567 (1980).  It is the actions of the defendant, not the
plaintiff, which are relevant.  Kulko
v. California Superior Court, 436 U.S. 84, 93B94, 98 S. Ct. 1690, 1997B98 (1978).  A plaintiff’s unilateral actions in
soliciting a contract or in carrying out the terms of a contract are
irrelevant.  Hanson, 357 U.S. at
253, 78 S. Ct. 15 1240; Hydrokinetics, Inc., 700 F.2d at 1028; U-Anchor
Advertising, Inc. v. Burt, 553 S.W.2d 760, 763 (Tex. 1977).  

Here, we find appellant did not “purposefully avail” itself
of Texas laws.  There is no evidence the
company advertised in Texas, conducted a direct mail campaign in Texas, or
solicited business in Texas in any way. 
Indeed, over the past ten years, 98 percent of Budgget’s
annual revenues have been earned from work done for clients situated in
Oklahoma; Faber is the only Texas company from which Budgget has earned any
revenue at all and this revenue resulted from the project at hand. 

 With regard to the
Qatar project, facts demonstrate Devco and Faber approached Budgget to establish
a working relationship, not the other way around.  Budgget performed its project activities in
Oklahoma; performed its fabrication work at its facilities in Oklahoma;
received appellee’s designs, specifications and
instructions in Oklahoma; conducted its communications with appellee via
telephone or personal visits in Oklahoma; made delivery in Oklahoma; and
received payment by hand delivery in Oklahoma. 
Additionally, no one from Budgget traveled to Texas in connection with
the project; only Oklahoma entities were hired as subcontractors; and Devco’s expediter, who monitored Budgget’s
performance and progress on the project, conducted his activities in Oklahoma. 

The only evidence appellee has provided to suggest appellant “purposefully
availed” itself of Texas law is that (1) appellant accepted a purchase order
from Faber, a Texas limited liability company; (2) appellant’s performance was
linked to design specifications created by Faber in Texas; and (3) appellant
purchased materials from two Texas suppliers for the project.  We find such evidence to be unpersuasive.








First, the mere fact that Budgget entered into an agreement
with Faber, a Texas corporation, does not perforce bring Budgget within the
jurisdiction of a Texas court.[3]  Texas courts have repeatedly recognized that
personal jurisdiction is not justified by the single fact that a non-resident
contracts with a Texas resident.  J.D.
Fields & Co., Inc. v. W. H. Streit, Inc., 21 S.W.3d 599, 604 (Tex. App.CHouston [1st Dist.] 2000, no pet.); Electrosource,
Inc. v. Horizon Battery Technologies, 176 F.3d 867, 872 (5th Cir. 1999)
(applying Texas law).[4]








Next, Faber’s development and design of specifications for
the conveyor system is irrelevant for the purpose of determining whether
Budgget is subject to jurisdiction in Texas. 
Faber did not to create its drawings as part of the contract; rather,
Faber created its drawings as a predicate to the contract.[5]  Indeed, Budgget was not desirous of acquiring
Faber’s drawings; rather, Budgget was desirous of acquiring Faber’s businessCto do this, it necessarily had to
perform according to Faber’s specifications. 
The unilateral activities of a plaintiff soliciting a contract or
carrying out the terms of a contract cannot satisfy the requirement of contact
with the forum state.  Hanson, 357
U.S. at 253, 78 S. Ct. at 1240; Hydrokinetics, Inc., 700 F.2d at 1028; U-Anchor
Advertising, Inc. 553 S.W.2d at 763.[6]  See e.g. 3-D Elec. Co., Inc. v. Barnett
Constr. Co., 706 S.W.2d 135, 142B43 (Tex. App.CDallas 1986, writ ref=d n.r.e.) (finding no specific
jurisdiction over Tennessee company where third party initiated the contract,
even though the defendant had a contract with a Texas resident, conducted price
negotiations by telephone and facsimile with a Texas resident, and preliminary
design work was performed by a Texas resident). 


Finally, the fact that Budgget purchased components and
supplies from two Texas vendors does not amount to contact sufficient to
subject a nonresident to personal jurisdiction. 
See Helicopteros Nacionales, 466 U.S. at 418, 104 S. Ct. at 1874
(no personal jurisdiction despite helicopter company’s purchases of
approximately 80 percent of its fleet from Texas).  Neither a contract with a Texas resident, nor
a payment made to Texas is sufficient to justify personal jurisdiction over a
non-resident defendant.  J.D. Fields
& Co., 21 S.W.3d at 604.

We sustain appellant=s first point of error.

2.         General
Jurisdiction

General jurisdiction is found when a non-resident defendant’s
contacts with a forum are “continuous and systematic,” allowing the forum state
to exercise personal jurisdiction even if the cause of action did not arise out
of the contacts with the state.  CSR,
Ltd., 925 S.W.2d at 595.  A finding
of general jurisdiction requires a non-resident defendant to have a higher
level of “contacts” with the forum state than those required for a finding of
specific jurisdiction.  Dalton v.
R&W Marine, Inc., 897 F.2d 1359, 1362 (5th Cir. 1990).

Here, we find no evidence of “continuous and systematic”
contacts on the part of appellant with the state of Texas.  Indeed, Budgget is not a resident of Texas;
it does not maintain a registered agent for service in Texas; it does not
engage in business in Texas; and it has not committed any tort within
Texas.  Additionally, appellant does not
maintain a place of business in Texas, it does not maintain a bank account in
Texas, and it does not employ servants, agents or employees in Texas.  See Helicopteros Nacionales, 466 U.S.
at 414, 104 S. Ct. at 1872; Tex. Civ.
Prac. & Rem. Code ' 17.042.

Appellee contends, however, that general jurisdiction may be
asserted over Budgget because (1) Budgget makes routine telephone calls to
Texas businesses and residents; (2) Budgget purchases raw materials from
companies located in Texas; (3) Budgget once bid for work from a Texas company;
and (4) Budgget makes occasional deliveries in Texas.  We find such evidence to be unpersuasive.

First, appellant’s telephone calls to Texas have arisen in
only three situations: (1) from personal calls made by Budgget’s
president; (2) from orders of raw materials made by Budgget of Oklahoma
companies that maintain offices in Texas; and (3) from purchases of warehousing
services to facilitate transport of fabrication product to Texas.  Absent other contact, such minimal telephone
calls fail to subject Budgget to the jurisdiction of Texas courts.  See Hydrokinetics, Inc., 700 F.2d at
1029 (finding exchange of communications between defendant and plaintiff to be
insufficient to bring defendant within jurisdiction of Texas courts).      

Second, appellant’s purchases of raw materials from Texas
companies have been made in only two situations:  (1) when Oklahoma companies have rerouted
Budgget to their Texas offices; and (2) when Texas companies have offered
specialized products not available in Oklahoma. 
Such purchases of goods and services from a forum state, even at regular
intervals, is not by itself enough to subject a nonresident defendant to
general jurisdiction.  Helicopteros
Nacionales, 466 U.S. at 411B12, 104 S. Ct. at 1870B71. 

Third, appellant=s one bid on a Texas job was made
pursuant to a lead forwarded by  an
Oklahoma supplier and it did not result in business.  Such a one-time contact can hardly be called “continuous
and systematic”; thus, we conclude general jurisdiction will not lie based on
this evidence.

Finally, while Budgget concedes it has made deliveries to
companies in Texas, testimony indicates the deliveries were never made to
customers or companies that paid for the product.  Rather, Budgget’s
deliveries to Texas have occurred only in response to requests by Budgget’s Oklahoma customers to deliver to sites
located in Texas.[7]  Title has always passed in Oklahoma.

We conclude Texas courts have no general jurisdiction over
Budgget.  Accordingly, we sustain
appellant=s second point of error.

3.         Fair Play and
Substantial Justice

Because we conclude the trial court erred in denying Budgget’s special appearance, we need not determine whether
imposition of personal jurisdiction over appellant offends the traditional
notions of fair play and substantial justice. 
See Burger King Corp., 471 U.S. at 475, 105 S. Ct. at 2184; Zac
Smith, 734 S.W.2d at 663; Reyes v. Marine Drilling Companies, Inc.,
944 S.W.2d 401, 405 (Tex. App.CHouston [14th Dist.] 1997, no writ).  

Accordingly, we do not address appellant’s third point of
error.

*     *     *    
*

Having reviewed all evidence before the trial court relating
to appellant=s special appearance and having found
appellant negated all bases of personal jurisdiction, we reverse the trial
court’s finding of personal jurisdiction, render judgment sustaining appellant’s
special appearance, and order dismissal of appellee’s
suit for lack of in personam jurisdiction.

 

 

/s/        John S. Anderson

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed May 15, 2003.

Panel consists of
Justices Anderson, Seymore, and Guzman.











[1]  In its brief
and at trial, appellee asserted appellant waived its special appearance by
filing an answer and affirmative claim for attorney’s fees.  We disagree. 
Because appellant’s original answer was filed subject to the
trial court=s ruling on its special appearanceCand because appellant=s
request for attorney’s fees was included in the prayer of its original answerCappellant’s filing of an original answer in
conjunction with its special appearance did not waive its special
appearance.  See Tex. R. Civ. P. 120a(1); Koch
Graphics, Inc. v. Avantech, Inc., 803 S.W.2d 432 , 433 (Tex. App.CDallas 1991, no pet.) (it is only after the court has
ruled against a special appearance that it has jurisdiction to consider an
original answer).





[2]  Although the
trial court seems to have focused on specific jurisdiction in determining
whether Budgget is subject to personal jurisdiction in Texas, this court will
consider both specific and general jurisdiction because either will
subject Budgget to the jurisdiction of Texas courts and appellant has appealed
on both grounds.





[3]  There are two
pieces of evidence suggesting a contract between the two parties: (1) a letter
from Faber to Budgget detailing the Qatar project; and (2) a purchase order
from Faber to Budgget placing an order for Budgget’s
services.  Because an accepted purchase
order can form the basis of a contract, we conclude there was indeed a contract
between Faber and Budgget.  See
Mid-South Packers, Inc. v. Shoney’s, Inc., 761 F. 2d 1117, 1121 (5th Cir.
1985); Fleetwood Const. Co., Inc. v. Western Steel, 510 S.W.2d 161, 163
(Tex. Civ. App.CCorpus Christi 1974, no writ).  The contract was executed in Oklahoma when
Budgget commenced work and “accepted” Faber’s offer to buy services. 





[4]  Appellant
argues the instant case is analogous to Cartlidge v. Hernandez, 9 S.W.3d
341, 347 (Tex. App.CHouston [14th Dist.] 1999, no pet.) (finding “substantial
connection” to Texas and sufficient minimum contacts with Texas where
out-of-state attorney, after being approached by Texas residents, contracted
with the residents and performed services outside Texas).  We disagree.

In Cartlidge, the defendant
negotiated with clients and sent generic employment/retainer contracts to Texas
residents without specifying he would only provide representation in
Nevada.  Here, appellant negotiated with
Devco, an Oklahoma company, and in the only writing memorializing the projectCthe letter from Faber to Budgget dated October 10,
2000Cit was specifically provided that Budgget’s
obligations were to be performed in Oklahoma.





[5]  The contractCas evidenced by the purchase orderCcalled for Budgget to fabricate conveyor components “in
accordance with . . . Faber-issued shop detail drawings” and called for Faber
to pay Budgget $311,691.25. 





[6] Appellee claims Budgget was “doing business” in Texas
pursuant to the Texas Long Arm statute because Budgget (1) contracted with
Faber, a Texas “resident,” and (2) Faber performed at least a portion of its
obligations under the contract in Texas. 
See Tex. Civ. Prac. &
Rem. Code Ann. ' 17.042(1) (a party “does business” in Texas if it
contracts by mail or otherwise with a Texas resident and either party is to
perform the contract in whole or in part in this state).  We disagree. 


First, Budgget did not contract with Faber
for design services, Devco did.  Budgget
contracted with Faber for remuneration that was to take place in
Oklahoma.  Any design activities
conducted by Faber were to be performed under its contract with Devco for the
purpose of defining the fabrication services required of Budgget. 





[7]  According to
appellant’s testimony, this happened approximately three times in 2001.